# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

TARGET CORP., *et al.*,

                    Plaintiffs,

v.

VISA INC., *et al.*,

                    Defendants.

Case No. 13-cv-3477 (AKH)

---

7-ELEVEN, INC., *et al.*,

                    Plaintiffs,

v.

VISA INC., *et al.*,

                    Defendants.

Case No. 13-cv-4442 (AKH)

## MEMORANDUM OF LAW IN SUPPORT OF NETWORK DEFENDANTS' MOTION FOR REVISED ORDER REGULATING PROCEEDINGS PROVIDING FOR SEPARATE TRIALS OR IN THE ALTERNATIVE, TO PRECLUDE UNDISCLOSED EXPERT TESTIMONY UNDER FEDERAL RULE OF CIVIL PROCEDURE 37

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT......................................................................................1

BACKGROUND ..........................................................................................................3

    I.     Expert Discovery Proceeded Separately Throughout The *Target* And *7-Eleven* Proceedings. ...........................................................................3

    II.    The Court Sought To Streamline The Trial By Ordering Expert Consolidation. ........................................................................................5

ARGUMENT ...............................................................................................................9

    I.     Plaintiffs' Proposal Violates The Court's Directions And Creates No Efficiency Gains...............................................................................9

    II.    Plaintiffs' Proposed Expert Slate Will Cause Significant Juror Confusion. .........11

    III.   Plaintiffs' Proposal Is Highly Prejudicial To Defendants. ...................................15

         A.    Courts routinely reject eleventh-hour shifts in expert testimony. .............15

         B.    Plaintiffs' proposal improperly allows them to cherry-pick from among their experts' opinions. ..................................................17

         C.    Plaintiffs' proposal permits Plaintiffs to belatedly supplement their expert disclosures.........................................................19

    IV.   The Court Should Order Separate Trials, With The *Target* Trial Scheduled First. ......................................................................................20

         A.    Trial of only the *Target* Plaintiffs should proceed first. ...........................21

         B.    Alternatively, Plaintiffs should be required to each put forth their own experts. ............................................................................22

CONCLUSION............................................................................................................23

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Agence France Presse v. Morel*,
  293 F.R.D. 682 (S.D.N.Y. 2013) ......................................................................... 16

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
  55 F.R.D. 292 (S.D.N.Y. 1972) ........................................................................... 22

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ........................................................................... 12, 14

*Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*,
  308 F.R.D. 649 (S.D. Cal. 2015) ..................................................................... 17, 20

*Hall v. Hall*,
  584 U.S. 59 (2018) ....................................................................................... 15, 22

*In re Ampicillin Antitrust Litig.*,
  88 F.R.D. 174 (D.D.C. 1980) .............................................................................. 21

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  2000 WL 748155 (N.D. Ill. June 5, 2000) ............................................................ 16

*In re Currency Conversion Fee Antitrust Litig.*,
  2009 WL 1834351 (S.D.N.Y. June 18, 2009) ........................................................ 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  2022 WL 15053250 (E.D.N.Y. Oct. 26, 2022) ...................................................... 18

*In re Welding Fume Products Liability Litig.*,
  2010 WL 7699456 (N.D. Ohio June 4, 2010) ......................................................... 5

*In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. &
  VerSys Femoral Head Prods. Liab. Litig.*,
  2021 WL 4251906 (S.D.N.Y. Sept. 17, 2021) ....................................................... 20

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990) .......................................................................... 2, 15

*Johnson v. Manhattan Ry. Co.*,
  289 U.S. 479 (1933) ..................................................................................... 2, 10

*Lippe v. Bairnco Corp.*,
  249 F. Supp. 2d 357 (S.D.N.Y. 2003) ................................................................. 16

*Lohnes v. Level 3 Commc'ns, Inc.*,
 272 F.3d 49 (1st Cir. 2001) ........................................................................... 20

*Marmo v. Tyson Fresh Meats, Inc.*,
 457 F.3d 748 (8th Cir. 2006) ......................................................................... 17

*Ohio v. American Express Co.*,
 585 U.S. 529 (2018) ........................................................................... 12, 18, 19

*On Track Innovations, Ltd. v. T-Mobile USA, Inc.*,
 2015 WL 14072083 (S.D.N.Y. July 24, 2015) ............................................... 20

*Reading Indus., Inc. v. Kennecott Copper Corp.*,
 61 F.R.D. 662 (S.D.N.Y. 1974) ..................................................................... 21

*Shipp v. Arnold*,
 2019 WL 4040597 (W.D. Ark. Aug. 27, 2019) .............................................. 17

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
 118 F.3d 955 (2d Cir. 1997) .......................................................................... 16

*US Airways, Inc. v. Sabre Holdings Corp.*,
 938 F.3d 43 (2d Cir. 2019) ............................................................................ 18

*Weiss v. Nat'l Westminster Bank PLC*,
 2017 WL 10058916 (E.D.N.Y. Mar. 31, 2017) ...............................................11

## PRELIMINARY STATEMENT

At the April conference, this Court instructed Plaintiffs that it "can't have a joint trial with multiple experts giving different theories to the jury without confusing them and [the Court] and the parties. So if that's what's going to be, we're going to have separate trials." Ex. A, April 2, 2025 Conference Transcript at 31:19–22. Thus, the Court directed Plaintiffs to select <u>five</u> joint experts—including only one economist—or the Court would "split the trials" as between the *Target* Plaintiffs and the *7-Eleven* Plaintiffs. In response, Plaintiffs represented that they could and would satisfy the Court's requirements, including by designating one joint economist to opine on behalf of all Plaintiffs at trial. *See id.* at 32:10–12 ("THE COURT: . . . That means there will be one economist. MR. SHINDER: I'm fine with that."); *id.* at 24:24–25:7 ("THE COURT: And . . . would it be possible for you to decide we'll go with just one economist? MS. PATRICK: Yes[.]"). Plaintiffs have not done what they said they would do.

Contrary to the Court's instructions, Plaintiffs now intend to call as many as <u>nine</u> experts at trial, including <u>three</u> economists: Mr. Romaine (the *Target* Plaintiffs' expert), Professor Pathak (the *7-Eleven* Plaintiffs' expert), and Dr. McAfee (another *Target* Plaintiffs' expert on antitrust economics). Plaintiffs' proposal concedes that each Plaintiff group must put on testimony from experts they originally retained in order to purport to meet each group's burden of proof and avoid a Rule 50(a) dismissal. But, as the Court recognized, the presentation of evidence from multiple Plaintiff-side economists with different methodologies, theories, and opinions would not be workable. It would result in an unmanageable trial structure, jury confusion, and prejudice to Defendants, including the banks that are defendants only in the *7-Eleven* action. To minimize the burden for the jury and ensure an efficient and clear presentation of evidence, the Visa and Mastercard Defendants respectfully request that the Court order separate trials for the *Target* and *7-Eleven* Plaintiffs, with the earlier-filed and far more streamlined *Target* case to go first.

1

Antitrust economics are complicated enough when presented by a single expert. Here, the *Target* Plaintiffs' experts and the *7-Eleven* Plaintiffs' expert proffer different theories, adopt different methodologies, and rely on different opinions as to each Plaintiff's economic condition in a world "but for" Defendants' alleged anticompetitive actions. To present complex antitrust economics with patchwork and contradictory expert testimony would cause significant juror confusion. Either the economists will have to duplicate testimony to lay the foundation for their sometimes-inconsistent opinions, or the jury will be still further confused and frustrated by partial and incomplete testimony. Similarly, cross will either be duplicative or risk lacking clarity. All of this is precisely what consolidation is designed to avoid. *See Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496 (1933) ("consolidation is permitted as a matter of convenience and economy in administration"); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) (consolidation appropriate only if "the specific risks of prejudice and possible confusion [are] overborne" by other factors).[1]

The confusion, inefficiencies, and prejudice resulting from the *Target* and *7-Eleven* Plaintiffs' proposal are an inevitable outgrowth of their belated insistence on trying their cases together. For over a decade, Plaintiffs chose to litigate separate cases with separate experts, and when Defendants suggested any overlap, the Plaintiff groups remonstrated that there was an "enormous theoretical difference" between their respective experts and that "[t]he *7-Eleven* Plaintiffs seek to prove a different case than the *Target* Plaintiffs." Reply MOL in Further Supp. of *Target* Pls.' Mot. to Exclude the Rep. and Ops. of Def. Expert Andres V. Lerner ("Lerner *Daubert* Reply"), 1:05-md-1720-MKB-JAM ("MDL Dkt."), ECF 8125 at 6–7. Plaintiffs now

---

[1] Each of Messrs. Romaine and Pathak are already substitutes for earlier experts presented by Plaintiffs (Professors Harris and Hausman, respectively) whose voluminous reports and depositions they each "adopt" *in toto*. The potential for confusion of the jurors and prejudice to Defendants from this arrangement is already substantial.

attempt to undo years of carefully negotiated expert discovery by cherry-picking expert opinions they deem superior or less vulnerable, to present the partial opinions of three different economists representing two different plaintiff groups in one trial. This would confer an impermissible windfall advantage on Plaintiffs who have the benefit of a years-long window into Defendants' expert strategy. The hour is too late, the complexities too great, and the stakes too high for Plaintiffs to now be permitted an about-face.

Separate trials are the sounder course. Allowing the *Target* Plaintiffs to try their case first—with fewer claims against fewer defendants—would avoid the manifold problems presented by a joint trial, permit the Court and the parties to clarify evidentiary and other issues, and enable the Court and the parties to benefit from the orderly and careful superintendence of the first trial. In the alternative, Plaintiffs should be required to put forth the experts they originally retained, with each expert instructed not to stray beyond the scope of their disclosed opinions.

## **BACKGROUND**

The *Target* Plaintiffs filed their case on May 23, 2013. The *7-Eleven* Plaintiffs' case was filed separately on June 26, 2013. The plaintiffs in each case are represented by different counsel, and the actions involve different claims and theories of liability. The *Target* Plaintiffs chose to sue only Visa and Mastercard, and brought one claim under Section 1 of the Sherman Act. The *7-Eleven* Plaintiffs, by contrast, also sued four card-issuing banks, and brought an additional claim under Section 2 of the Sherman Act.

### I.    **Expert Discovery Proceeded Separately Throughout The *Target* And *7-Eleven* Proceedings.**

As a direct result of Plaintiffs' strategic choices, and as the Federal Rules contemplate, expert discovery proceeded separately throughout the life of the *Target* and *7-Eleven* actions. On

October 5, 2018—the court-ordered deadline for expert disclosures[2]—the *Target* Plaintiffs disclosed and submitted reports from five experts, and the *7-Eleven* Plaintiffs separately disclosed and submitted the reports of six other experts.  The two separate Plaintiff groups also jointly retained and submitted one joint expert report by Maria Blanco, who was subsequently replaced by Dr. Reto Kohler (a non-economist).  Moreover, they repeatedly contended that the many non-joint experts for each Plaintiff group could not, as a matter of law, be used in the other Plaintiff group's action because, among other things, the experts had entirely different theories of the different cases the two Plaintiff groups intended to present.  Plaintiffs made these points emphatically in *Daubert* briefing, arguing:

- "The Direct Action Plaintiffs have brought individual cases challenging anticompetitive conduct.  The fact that the cases were transferred to this Court for coordinated pretrial proceedings does not change their separate nature.  ***When these cases are sent back for trial proceedings, they will continue as separate cases.  Accordingly, when the Target Plaintiffs' case is tried, the jury will hear no evidence from Professor Hausman [now Professor Pathak]; similarly, when the 7-Eleven Plaintiffs' and The Home Depot's case are tried, their juries will hear no evidence from Dr. Harris [now Mr. Romaine].***"  MOL in Supp. of DAPs' Mot. to Exclude Portions of the Rep. and Ops. of Def. Expert R. Garrison Harvey ("Harvey *Daubert* Motion"), MDL Dkt., ECF 8092 at 19 (emphasis added) (internal citations omitted).

- "Defendants argue Mr. Harvey's comparison of Direct Action Plaintiffs' experts' benchmarks is relevant 'because these experts purport to estimate the interchange rates that would exist in similar but-for worlds.'  Defs.' Harvey Opp. at 16–17.  Defendants are wrong.  ***Such comparisons are not relevant because <u>Plaintiffs' but-for world models are different</u>, a fact which Mr. Harvey is not qualified, as a mathematician, to fully analyze and appreciate.***"  Reply MOL in Further Supp. of DAPs' Mot. to Exclude the Rep. and Ops. of Def. Expert R. Garrison Harvey ("Harvey *Daubert* Reply"), MDL Dkt., ECF 8095 at 8–9 (emphasis added).

- "***The 7-Eleven Plaintiffs seek to prove a different case than the Target Plaintiffs.  The 7-Eleven Plaintiffs claim that Visa monopolized the debit market; the Target Plaintiffs do not.***  Dr. Harris tried to navigate this ***<u>enormous theoretical difference</u>*** in his reply report, noting the difficulty of ascertaining

---

[2] *See* MDL Dkt., ECF 7229.

which portions of Dr. Lerner's report pertained to the monopoly claim, rather than to Dr. Harris' separate analysis of Visa's market power."  Lerner *Daubert* Reply at 6 (emphasis added).

Similarly, Plaintiffs repeatedly insisted that certain evidence could not be used in both cases because such evidence was, supposedly, "irrelevant to the claims in their [particular] case."[3] For instance, the *Target* Plaintiffs objected to the use of a statement from the deposition of Professor Hausman, *7-Eleven*'s expert, against the *Target* Plaintiffs, claiming it was "***irrelevant to the claims in their case and therefore inadmissible***."  9/22/20 DAPs' Resp. to Defs.' Rule 56.1 Statement at 63 (emphasis added); *see also id.* at 67, 83–84.  To support their objections, both Plaintiff groups relied on *In re Welding Fume Products Liability Litig.*, 2010 WL 7699456 (N.D. Ohio June 4, 2010), for its holding that: "The fact that a plaintiff in one case retains a case-specific expert provides no basis, without more, for deeming that expert as an agent for any other plaintiff." *Id.* at *87 n.332.

## II.    The Court Sought To Streamline The Trial By Ordering Expert Consolidation.

At the April 2, 2025 status conference, the Court raised concerns about the manageability of the six-plaintiff joint trial structure first suggested at the August 7, 2024 initial conference, given the duration and complexity of such a trial.[4]  Ex. A at 4:7–15.

Among other difficulties, the Court noted that Plaintiffs' choice to retain numerous different experts—including multiple economists to opine on overlapping issues—posed serious

---

[3] *See, e.g.*, 9/22/20 DAPs' Resp. to Defs.' Rule 56.1 Statement, MDL Dkt., ECF 8195, Add'l Resps. by *7-Eleven* Pls. to Defs.' 56.1 Statement ¶¶ 25–26, 37, 288 (objecting to the relevance of the Harris Report), ¶¶ 1, 8–9, 29, 272, 290 (objecting to other evidence on that basis); Add'l Resps. by *Target* Pls. to Defs' ¶¶ 25–26, 37 (objecting to the relevance of the Hausman Report); ¶¶ 1–2, 8–9, 29, 33, 272, 278, 284, 285, 290 (objecting to other evidence on that basis).

[4] Prior to the August 7, 2024 conference with this Court, the *Target* Plaintiffs and Defendants to the *Target* action filed a stipulation agreeing to propose to the Court a trial of the *Target* Plaintiffs' claims first.  *See* ECF 135.

practical problems and risked confusing the jury. The Court determined that joint experts were necessary for a consolidated trial to proceed.

> THE COURT: Mr. Shinder, ***I can't have a joint trial with multiple experts giving different theories to the jury without confusing them and me and the parties. So if that's what's going to be, we're going to have separate trials***.
>
> MR. SHINDER: Your Honor, I want to challenge the predicate of the separate experts offering different theories and confusion and go back to something I said before. They're virtually identical on all --
>
> THE COURT: ***Virtual identical does not help me. Lawyers have a way of expanding virtual. It's like limited issues, they're never limited. No. We can't have it. If you want to have a joint trial, you have to have joint experts. You want to have separate trials, you can have the experts you want.***
>
> MR. SHINDER: Well, I would prefer a joint trial. We can have joint experts. We can do that.
>
> THE COURT: Okay. ***That means there will be one economist.***
>
> MR. SHINDER: I'm fine with that.

*Id.* at 31:19–32:12 (emphasis added). In an effort to assuage the Court's concern, Plaintiffs incorrectly claimed for the first time that they already had—and thus could proceed with—five joint experts. *Id.* at 29:23–30:2.

Based on Plaintiffs' representations, the Court directed "the plaintiffs to ***list five experts that they will use in trial*** and do it quickly," including only one economist. *Id.* at 42:16–18 (emphasis added), 24:24–25:2. If Plaintiffs could not live up to these conditions, the Court determined that the trials would proceed separately. Plaintiffs agreed:

> THE COURT: . . . I'll put it this way. You want to try this together, come up with a common group of experts. ***Otherwise, I'll split the trial.***
>
> MS. PATRICK: All right.
>
> MR. SHINDER: Okay, your Honor.
>
> MS. PATRICK: We will do that, your Honor.

*Id.* at 31:19–32:12, 38:22–39:3 (emphasis added).

**Plaintiffs' first proposal.**  On April 9, 2025, Plaintiffs sent Defendants an initial proposal of "joint experts."  The proposal retained all three antitrust economists but attempted to obfuscate that fact by cabining Mr. Romaine to the damages phase of trial.  On April 21, 2025, the parties met and conferred.  Defendants asked a series of pointed questions concerning the mechanics of Plaintiffs' proposal, such as whether Plaintiffs intended their "joint experts" to modify or supplement their opinions or to adopt the opinions of other experts who were no longer offered. Plaintiffs agreed to respond to those questions at a subsequent meet and confer.

**Plaintiffs' second proposal.**  On April 24, 2025, the parties again met and conferred. There, Plaintiffs set out an entirely new approach.  Plaintiffs added Mr. Romaine back to the liability phase as a third antitrust economist, recognizing that Mr. Romaine's testimony would be needed to establish, at the least, causation and antitrust injury as to the *Target* Plaintiffs because Professor Pathak did not study or form opinions on the alleged anticompetitive effects of Defendants' challenged conduct on TJX and Macy's. ███████████████████████

█████████████████████████████████████████████████████████

████████████████████  Plaintiffs also stated that no expert would adopt the opinion of another expert or supplement their opinions.  They memorialized their new proposal in an email:

**Joint Affirmative Liability Experts**

| | |
|---|---|
| Parag Pathak | Antitrust economics |
| Reto Kohler | Issuer profitability |
| Stephen Mott | Digital wallets & innovation |
| Preston McAfee | Antitrust economics |
| Craig Romaine | Antitrust economics |

**Damages Experts (if liability is found)**

| | |
|---|---|
| Parag Pathak | Damages (benchmarks) |

| Ketan Patel | Damages (calculations) |
|---|---|
| Craig Romaine | Damages (benchmarks) |
| William Kennedy | Damages (calculations) |
| Stephen Rowe | Damages (calculations) |

**Potential Rebuttal Experts (depending upon Defendants' expert testimony)**

| Gregory Carpenter | Branding |
|---|---|

Ex. B, Plaintiffs' April 24, 2025 Correspondence to Defendants.

Plaintiffs' latest proposal includes at least eight and likely nine experts, including three antitrust economists for the liability phase: Professor Pathak, Mr. Romaine, and Dr. McAfee. Plaintiffs' new proposal drops only one duplicative expert (Mr. Calkins), through the proposed use of a joint (branding) expert (Mr. Carpenter).[5] Plaintiffs also now propose that the *7-Eleven* Plaintiffs' expert Mr. Mott will testify regarding digital wallets and innovation in *both cases*, despite the *Target* Plaintiffs never having engaged or disclosed an expert to opine on these topics.

Apparently recognizing the duplication between their economists, Plaintiffs stated that they intend to allocate at their discretion topics of testimony between Mr. Romaine and Professor Pathak. Mr. Romaine, according to Plaintiffs' proposal, is "currently expect[ed] [to] provide testimony regarding: i) Mastercard's market power in debit, ii) the history and development of the payment card industry, and iii) the proof of antitrust injury to TJX and Macy's, the latter of which will include their experiences with Visa and Mastercard, as well as evidence that each of them pays supracompetitive prices that they would not pay in a world 'but for' the anticompetitive restraints these Plaintiffs assert violate the antitrust laws." Ex. B at 2. But Plaintiffs were unwilling to limit Mr. Romaine to those three topics; they "reserve the right to elicit testimony from Mr. Romaine regarding _any_ topic in his reports that is _not_ covered by Dr. Pathak in his testimony." *Id.* (emphasis

---

[5] The other two experts dropped by Plaintiffs were only hired by one Plaintiff group and have no counterpart with duplicative testimony.

in original).  Plaintiffs did not disclose the topics to be covered by Professor Pathak, leaving Defendants to guess at the scope of both experts' testimony.

Finally, Plaintiffs asserted that network Defendants are not entitled to depose any new joint expert witness.  They offered only that the bank Defendants may take a limited (3.5-hour) deposition of Dr. McAfee and Mr. Romaine, both of whom were retained only by the *Target* Plaintiffs and have never offered opinions regarding the claims of the *7-Eleven* Plaintiffs.

## ARGUMENT

### I.    Plaintiffs' Proposal Violates The Court's Directions And Creates No Efficiency Gains.

Plaintiffs have blatantly contravened the Court's directive, and in the process demonstrated why a combined trial simply does not work.  The Court stated: "there will be one economist"— Plaintiffs have <u>three</u>.  The Court directed "the plaintiffs to list five experts that they will use in trial"—Plaintiffs have <u>nine</u>.  Plaintiffs' decision should be dispositive of the idea of a joint trial.  Their inability to follow the Court's clear directive and their own representations at the April conference shows that a joint trial would be inefficient, unfair, and prejudicial to Defendants.  *See supra* at 5–6.

Plaintiffs seemingly justify their failure to comply with the Court's directive and their own undertakings, along with the resulting inefficiencies, by mixing and matching the testimony of Mr. Romaine and Professor Pathak (with the scope of Dr. McAfee's testimony remaining unclear[6]).  The Court anticipated such a gambit at the April conference.  After Mr. Shinder argued (in contravention of the statements in Plaintiffs' *Daubert* briefing recited above) that the experts are "virtually identical on all" important issues, the Court stated:  "Virtual[ly] identical does not help

---

[6] Plaintiffs have not communicated their intent as to the scope of Dr. McAfee's testimony, though Dr. McAfee's opinions overlap with those of Professor Pathak and his testimony is therefore similarly open to 'mixing and matching' under Plaintiffs' proposal.

me.  Lawyers have a way of expanding virtual.  It's like limited issues, they're never limited.  ***No. We can't have it.  If you want to have a joint trial, you have to have joint experts.  You want to have separate trials, you can have the experts you want. . . .  That means there will be one economist.***"  Ex. A at 32:2–11 (emphasis added).  As the Court rightly anticipated, and as explained below, it is not possible for Plaintiffs to neatly limit the testimony of their economists to avoid duplication or the presentation of conflicting theories.  The result will be days of overlapping, and often contradictory, testimony by three different economists, confusing the jury and prejudicing Defendants.

In addition to tendering three antitrust economists when the Court limited them to one, Plaintiffs identified nine experts in total when the Court limited them to five.  Even setting aside damages experts, Plaintiffs' proposal identifies six liability experts, which they attempt to gloss over by classifying Mr. Carpenter (a rebuttal expert) separately.[7]  And if Plaintiffs prevail on liability, their proposal means the same jurors will hear testimony from three additional damages experts, along with further testimony from Mr. Romaine and Professor Pathak.  Plaintiffs cannot credibly argue that they complied with the Court's instruction to "list five experts that they will use in trial" by allocating nine experts to different phases and roles.  Ex. A at 42:16–18.

By issuing a clear instruction to Plaintiffs to cull their expert list, the Court sought to avoid the manifest confusion and prejudice from a veritable babel of conflicting experts that far outweighs any minimal gains in "convenience and economy in administration."  *Johnson*, 289 U.S. at 496.  Plaintiffs' failure to comply with the Court's instructions establishes that a joint trial will be highly inconvenient and uneconomic to administer.  Certainly, Plaintiffs have not met their

---

[7] Indeed, Dr. McAfee also offers rebuttal testimony, but Plaintiffs have listed him as an affirmative expert.  From the jury's standpoint and from a trial management standpoint, there will be no distinction between a rebuttal liability expert and an affirmative liability expert.

burden to show otherwise. *See In re Currency Conversion Fee Antitrust Litig.*, 2009 WL 1834351, at *2 (S.D.N.Y. June 18, 2009) ("[A]t all times, the burden remains with the moving party to demonstrate that consolidation is appropriate.").

To be clear, the proposal Plaintiffs initially agreed to at the April status conference—to have a slate of five truly joint experts, including the testimony of only one economist—would also be prejudicial and unworkable. It would at a minimum require a major reopening of expert discovery only months before trial. Plaintiffs quickly abandoned this option, presumably because they understood they would further hamstring their own ability to prove their respective cases, in addition to risking reversible error due to the severe prejudice it would impose on Defendants.

## II.    Plaintiffs' Proposed Expert Slate Will Cause Significant Juror Confusion.

Plaintiffs propose to do precisely what the Court stated was unworkable: patch together the testimony of three economists with different antitrust theories, but-for worlds, and analytical methods. That will cause deep juror confusion and impede an orderly trial. As the Court explained, "I can't have a joint trial with multiple experts giving different theories to the jury without confusing them and me and the parties. So if that's what's going to be, we're going to have separate trials." Ex. A at 31:19–22; *see, e.g.*, *Weiss v. Nat'l Westminster Bank PLC*, 2017 WL 10058916, at *2 (E.D.N.Y. Mar. 31, 2017) (denying consolidation where "the possible prejudice that would result because of jury confusion over the important issue of scienter far outweighs the minimal benefits in judicial economy gained by consolidating the trials").

The two Plaintiff groups seem to have realized that they need both Mr. Romaine and Professor Pathak—who each opined only as to one Plaintiff group—to have any hope of meeting

their respective burdens on injury and causation, among other issues.[8]  During the second meet

and confer, Plaintiffs were candid that they were mindful of the Rule 50 risks raised by their prior

proposal to cut down their experts.[9]  But as this Court recognized, it is not reasonable in a complex

antitrust trial to expect jurors to parse the testimony of these economists—who sometimes clash

and sometimes dovetail, and who will at times testify as joint experts and at other times testify

regarding one Plaintiff group alone.

As  Plaintiffs  themselves  have  noted,  Plaintiffs'  economists  employ  different

methodological approaches, address different points, and make different arguments.  *See infra* Part

III.B. ███████████████████████████████████████████████████

████████████████████████████████████ █ ████████████████

---

█ █████████████████████████████████████████████████████

[9] Under a rule-of-reason analysis, Plaintiffs have the burden of proving that the challenged conduct has a "substantial anticompetitive effect" that harms merchants in the relevant markets.  *Ohio v. American Express Co.*, 585 U.S. 529, 541 (2018).  As a part of their liability case-in-chief, each Plaintiff must prove that they were injured and that the challenged conduct was a but-for cause of those injuries.  *See, e.g.*, *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007).  After Plaintiffs' initial proposal, Defendants asked Plaintiffs if Professor Pathak intended to opine as to the antitrust injury to TJX and Macy's, the two trial plaintiffs in the *Target* action on behalf of whom Professor Pathak was not engaged and has never opined.  Plaintiffs conceded during the second meet and confer that TJX and Macy's would need to submit proof of injury and causation to avoid judgment as a matter of law, necessitating testimony from Mr. Romaine, the economist who has previously opined on behalf of those Plaintiffs.

█ █████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
███████████████████████



Moreover, as Plaintiffs themselves have stridently asserted (*see supra* at 4–5), their economists also have a series of contradictory assumptions about the but-for world that would exist in the absence of the challenged conduct.

███████████████████████████████

███████████████████████████████

Plaintiffs will not be able to avoid contradictory testimony by limiting specific experts to specific topics. Consider just one example: Plaintiffs represent that Mr. Romaine will testify regarding the purported antitrust injury to TJX and Macy's, including evidence that they pay supracompetitive prices. But to show supracompetitive prices, it is black-letter law that Mr. Romaine must compare the actual price TJX and Macy's paid to the price they would have paid in his but-for world. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 106–07 (2d Cir. 2007).[14] Therefore, Mr. Romaine will be required to opine on the full scope of his but-for world and detail all the ways in which "the but-for world would have been different than the actual world" and describe all the "fundamental economic and competitive features of the markets at issue" on which his "but-for world is grounded." Harris 2018 Rep. ¶ 80. This covers a huge portion of Mr. Romaine's report, which spans hundreds of pages. Critically, Mr. Romaine's but-for world is—as Plaintiffs themselves have conceded—very different from Professor Pathak's. *See* Harvey *Daubert* Reply at 8–9 ("Plaintiffs' but-for world models are different."); *see also supra* n.13. Thus, as the Court predicted at the April conference, the "limited" topics as to which Mr. Romaine will supposedly testify will inevitably expand, resulting in the presentation of conflicting economic theories to the jury on core elements of Plaintiffs' claims.

Expert testimony in a complex antitrust trial is not a smorgasbord from which various theories advanced by different experts can be chosen and combined, while others posited by the same experts are discarded. An expert's opinions rest on a body of work, and those opinions cannot

---

[14] Plaintiffs have acknowledged as much. *See* Ex. G, August 7, 2024 Conference Transcript at 35:21–36:1 ("MS. PATRICK: . . . Obviously the same jury does have to evaluate damages that evaluates liability. I think there's going to be less efficiency there than maybe is hoped because ***the proof of antitrust injury is going to involve the proof of damages*** . . . .") (emphasis added).

be shorn of context or their foundation. Nonetheless, rather than abide by the Court's instructions, Plaintiffs' proposal would overwhelm the jury with different economic methodologies, but-for worlds, and plaintiff-specific testimony. That will create an unworkable and unfair trial.

## III.    Plaintiffs' Proposal Is Highly Prejudicial To Defendants.

Plaintiffs' proposal impermissibly prejudices Defendants. "Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Johnson*, 899 F.2d at 1285; *see Hall v. Hall*, 584 U.S. 59, 72 (2018) ("consolidation could not prejudice rights to which the parties would have been due had consolidation never occurred"). Plaintiffs' proposal also flatly violates Rule 26 of the Federal Rules of Civil Procedure, which states that parties "must make [expert] disclosures at the times and in the sequence that the court orders."[15]  Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

After twelve years of litigation and six years of expert discovery—in which all parties chose their experts and litigated separately—Plaintiffs seek to redraw the expert landscape on the courthouse steps. This would undo many of the strategic choices both Plaintiffs and Defendants have made; undermine the painstaking, time-consuming, and expensive efforts Defendants and their experts have expended in responding to Plaintiffs' experts' *different* theories under the supervision of the MDL court; and give Plaintiffs an unwarranted second bite at the apple. The Court should refuse Plaintiffs' invitation to commit reversible error.

### A.    *Courts routinely reject eleventh-hour shifts in expert testimony.*

Courts routinely reject attempts to recast experts just months before trial, especially in

---

[15] Supplemental expert discovery closed on December 20, 2024. *See* ECF 90.

complex cases. Where "the parameters of the dispute in a highly technical case such as this are largely defined by expert testimony," late shifts in expert testimony are prejudicial, because "any differences between [one expert's] testimony and [another expert's] would redraw[] the boundaries of the case and almost certainly prejudice[] [defendants'] ability to meet [plaintiffs'] attack." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 962 (2d Cir. 1997).

Applying this sound logic in the antitrust context, the Northern District of Illinois rejected a late-stage attempt by opt-out plaintiffs in a Sherman Act case to "rely upon experts named by other parties to th[e] litigation." *In re Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 748155, at *2 (N.D. Ill. June 5, 2000). The court explained that because this proposed change "occurred after the close of Rule 26 expert discovery," plaintiffs had the burden to "demonstrate [they were] justified in violating Rule 26(a), or that [their] violation was harmless." *Id.* at *2; *see also Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013) (same). The court noted that "Defendants had no reason to test the experts on their putative opinions and the documents at issue as they pertain to these particular plaintiffs" and "did not direct their own experts to analyze and prepare counter-opinions specific to these particular Plaintiffs." *In re Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 748155, at *3. "As a result, permitting Plaintiffs to utilize the information and experts at issue would be an eleventh hour disclosure that would greatly and unduly prejudice Defendants' ability to try this case." *Id.*

Courts in the Second Circuit and other districts have similarly refused to allow parties to alter their expert plans after the close of expert discovery. *See Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 385–86 (S.D.N.Y. 2003) (denying plaintiffs' request to substitute expert in long-running case where discovery was closed and defendants had been preparing defense for months based on previous expert), *aff'd*, 99 F. App'x 274 (2d. Cir. 2004); *Fid. Nat'l Fin., Inc. v. Nat'l Union Fire*

16

*Ins. Co. of Pittsburgh, Pa*, 308 F.R.D. 649, 655 (S.D. Cal. 2015) ("no reason to permit [defendant] to gain a windfall advantage by substituting a 'new and better expert' which would make irrelevant all the work done by [plaintiff] to date to defend against [former expert's] original opinions"); *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 760 (8th Cir. 2006) (affirming district court's refusal to allow re-designation of new expert two months before trial because defendant "selected its own expert witnesses and developed motion and trial strategies based on that expert witness evidence").  This Court should do the same here.

> B.  *Plaintiffs' proposal improperly allows them to cherry-pick from among their experts' opinions.*

Plaintiffs propose to strategically apportion to Professor Pathak and Mr. Romaine various supposedly non-overlapping topics.  Not only is this "mix-and-match" approach plainly unworkable (*see supra* Part II), it is also highly prejudicial.

This approach would allow Plaintiffs to attempt to fill significant holes in their respective cases.  Plaintiffs know the rebuttal opinions Defendants' experts have issued, as well as the admissions Defendants have secured from both experts through multiple rounds of depositions. Plaintiffs' proposal would allow them to "designate [the] 'better' expert who holds differing or more advantageous opinions than the [other] expert" for critical topics of Plaintiffs' choosing. *Shipp v. Arnold*, 2019 WL 4040597, at *2 (W.D. Ark. Aug. 27, 2019).  Consider a few examples.[16]

*Market Definition*.  "To define relevant markets, antitrust economists often use the 'hypothetical monopolist test.'"  Hausman 2019 Rep. ¶ 138; *see also* Harris 2018 Rep. ¶ 487.  The test asks whether a "single profit-maximizing firm . . . could profitably impose a small but significant and non-transitory increase in price ('SSNIP') on at least one product in the market."

---

[16] None of the examples referenced are meant to suggest that either Mr. Romaine or Professor Pathak are reliable or adequate on the points discussed herein.

Romaine 2024 Rep. Appendix L ¶ 141. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

Mr. Romaine's implementation of the Hypothetical Monopolist Test suffers from glaring flaws.  To take one example, unless Mr. Romaine's testimony is excluded, Defendants will show at trial that Mr. Romaine's analysis fails to consider the cardholder side of the two-sided market[17]—precisely what Judge Brodie excluded as "inconsistent with the law" and contrary to *Ohio v. American Express Co.*, 585 U.S. 529 (2018).  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2022 WL 15053250, at *24 (E.D.N.Y. Oct. 26, 2022); *see also US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 57–58 (2d Cir. 2019) (vacating jury verdict because transaction platforms "must *always* receive two-sided treatment") (emphasis in original).  Aware of those significant deficiencies, the *Target* Plaintiffs seemingly seek to swap Mr. Romaine's market-definition analysis for that of Professor Pathak.

The *7-Eleven* Plaintiffs, in like fashion, apparently attempt to avoid critical weaknesses in Professor Pathak's analysis. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

--------------------------------

█ ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

_Market Power_.  While Mr. Romaine contends that Mastercard possesses market power in

the debit transactions market, ████████████████████████████████████████

███████████████████████    ██████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████    Critically, the _7-Eleven_

Plaintiffs have never once asserted that Mastercard possessed market power in debit.  They now

seem to seek the benefit of Mr. Romaine's opinions and testimony to the contrary.

Plaintiffs' attempt to shield weak points of their experts' testimony under the guise of

consolidation "efficiency" would severely prejudice Defendants in violation of Supreme Court

precedent.  _See Hall_, 584 U.S. at 67.  It should be flatly rejected.

C.  _Plaintiffs' proposal permits Plaintiffs to belatedly supplement their expert disclosures._

Plaintiffs' proposal also clearly amounts to improper expert supplementation.  The time to

amend and supplement expert opinions under Rule 26 has long passed.  _See_ ECF 90 (supplemental

expert discovery closed on December 20, 2024).  Prior to that deadline, Professor Pathak, Mr.

Carpenter, and Mr. Mott were disclosed only on behalf of the _7-Eleven_ Plaintiffs, while Mr.

Romaine and Dr. McAfee were disclosed only on behalf of the _Target_ Plaintiffs.  Indeed, counsel

for _7-Eleven_ confirmed at the April 21, 2025 meet and confer with Defendants that Dr. McAfee,

Mr. Calkins (Mr. Carpenter's counterpart for the _Target_ group), and Mr. Romaine were all retained

only in _Target_ and not _7-Eleven_.

Plaintiffs' proposal would allow them an improper "redo" after having analyzed years of

Defendants' expert strategy. *See In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & VerSys Femoral Head Prods. Liab. Litig.*, 2021 WL 4251906, at *4 (S.D.N.Y. Sept. 17, 2021) ("[G]ranting Plaintiffs' request would work prejudice to [Defendant] . . . . [Defendant] invested resources in challenging [Plaintiffs' expert] testimony with the justifiable understanding that [the expert] would be Plaintiffs' only engineering expert."). This is a clear violation of Rule 26 and would afford Plaintiffs precisely "the type of unfair tactical advantage that the disclosure rules were designed to eradicate." *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001); *see also Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 308 F.R.D. 649, 655 (S.D. Cal. 2015) (declining to permit a party "to gain a windfall advantage by substituting a 'new and better expert'").[18]

Nor can the violation be justified under Rule 37, as the failure to disclose was neither substantially justified nor harmless. Plaintiffs have been proceeding with their cases in parallel for years; at any point, they could have chosen to collaborate, and indeed did collaborate by engaging one joint expert: Reto Kohler. The myriad impacts of Plaintiffs' strategic choice to otherwise proceed separately cannot be undone at the last minute simply because Plaintiffs now see tactical advantages in a joint trial. The prejudice Defendants would incur in having the expert landscape totally reworked so many years into the litigation is not curable.

## IV.    The Court Should Order Separate Trials, With The *Target* Trial Scheduled First.

As Plaintiffs' proposal concedes, the problems posed by a consolidated trial cannot be resolved by Plaintiffs' adoption of joint experts. Thus, this Court should order that the cases proceed to trial separately, with the *Target* trial scheduled first. That approach avoids the many

---

[18] Plaintiffs' proposal further prejudices the bank Defendants by reopening expert discovery only months before trial and long after the close of expert discovery. Courts have rejected imposing further expert discovery burdens in similar circumstances. *See On Track Innovations, Ltd. v. T-Mobile USA, Inc.*, 2015 WL 14072083, at *5 (S.D.N.Y. July 24, 2015).

defects of Plaintiffs' proposed structure for a joint trial, enables the Court and the parties to hone evidentiary and procedural points in a leaner (and likely shorter) trial, and permits the larger *7-Eleven* trial to benefit from lessons learned and evidentiary rulings in the *Target* trial.

   A. *Trial of only the Target Plaintiffs should proceed first.*

   A trial of only the two *Target* Plaintiffs designated by the Court for the October trial—TJX and Macy's—would offer numerous advantages.

   **Manageability and juror confusion.** A trial focused solely on the antitrust conspiracy claims under Section 1 would be far more manageable and less likely to result in juror confusion. It will be quite difficult to avoid serious juror confusion concerns in any trial involving multiple antitrust claims pertaining to distinct markets, two networks, and a group of bank Defendants. *See In re Ampicillin Antitrust Litig.*, 88 F.R.D. 174, 177 (D.D.C. 1980) (denying consolidation where the government brought a Section 2 claim, as "[t]he respective theories underlying the § 1 Sherman Act claims are quite different and will undoubtedly call for different proof").

   The jury in the *7-Eleven* trial or a joint trial would be required to parse and separately evaluate the Section 1 and Section 2 claims, the latter of which pertains only to the distinct debit market. *See Reading Indus., Inc. v. Kennecott Copper Corp.*, 61 F.R.D. 662, 665 (S.D.N.Y. 1974) ("To expect a jury to assimilate the economic and historical condition of an entire industry, keeping separate the conspiracy claims from the non-conspiracy claims, . . . and to understand what would inevitably be an enormously complex charge at the end of trial is to expect too much."). As Plaintiffs previously argued, "[t]he *7-Eleven* Plaintiffs seek to prove a different case than the *Target* Plaintiffs. The *7-Eleven* Plaintiffs claim that Visa monopolized the debit market; the *Target* Plaintiffs do not." Lerner *Daubert* Reply at 6. The *Target* Plaintiffs themselves have described that divergence as an "enormous theoretical difference." *Id.* Because the Section 2 claim alleges a different type of harm to competition based on different conduct under a different legal standard,

it will "necessarily prompt different lines of inquiry" at trial. *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 55 F.R.D. 292, 297 (S.D.N.Y. 1972). That will not be true of the *Target* trial.

**Length.** A trial of only the two *Target* Plaintiffs designated by the Court for the October trial could easily cut trial time by as much as two weeks—not simply by a day or two by omitting a couple of experts—and would be sure to end before the winter holidays. There are fewer claims, fewer parties, and fewer experts, all of which would ensure a more expeditious trial. Ex. G at 37:10–12 ("THE COURT: . . . What I found successful, it's everyone's interest to have an economical trial as possible. ***The longer the trial, the more skewed the jury gets*** . . . .") (emphasis added).

**Prejudice.** As detailed above, the prejudice from Plaintiffs' proposal is manifest; the proposal violates binding precedent and the Federal Rules. Moreover, any delay for the *7-Eleven* Plaintiffs will be outweighed by the substantial benefit in terms of lessons learned and evidentiary rulings in the *Target* trial.

> *B. Alternatively, Plaintiffs should be required to each put forth their own experts.*

Should the Court determine that a consolidated trial is necessary, Plaintiffs should be held to their litigation choices and directed to present the experts they retained to meet their respective burdens of proof. Plaintiffs selected their own experts and required Defendants to take separate depositions of each slate of experts, submit rebuttal expert reports, and file distinct *Daubert* motions. Plaintiffs explicitly expected and argued for exactly this: "[W]hen the *Target* Plaintiffs' case is tried, the jury will hear no evidence from Professor Hausman; similarly, when the *7-Eleven* Plaintiffs' and The Home Depot's case are tried, their juries will hear no evidence from Dr. Harris." Harvey *Daubert* Motion at 19. Such an approach complies with precedent because it "preserv[es] the distinct identities of the cases and the rights of the separate parties in them," *Hall*, 584 U.S. at 67, and does not run afoul of Rule 26. Defendants are willing to discuss ways to streamline

duplicative testimony, but Plaintiffs cannot be permitted to discard what they deem to be the most vulnerable testimony on each topic in a seeming bid to shield their experts from cross-examination.

## <u>CONCLUSION</u>

Plaintiffs' "joint expert" proposal should be denied, and the October 20, 2025 trial should be limited to the *Target* Plaintiffs.  In the alternative, Plaintiffs should be required to put forth the experts they originally retained, with each expert instructed not to stray beyond the scope of their disclosed opinions.

Dated: May 21, 2025

Respectfully submitted,

**HOLWELL, SHUSTER & GOLDBERG LLP**

By: */s/ Michael S. Shuster*
Michael S. Shuster
Demian A. Ordway
Benjamin F. Heidlage
Gregory J. Dubinsky
425 Lexington Avenue
New York, NY 10017
(646) 837-5151
mshuster@hsgllp.com
dordway@hsgllp.com
bheidlage@hsgllp.com
gdubinsky@hsgllp.com

**ARNOLD & PORTER KAYE SCHOLER LLP**

Robert J. Vizas
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
(415) 471-3100
robert.vizas@arnoldporter.com

Anne P. Davis
Matthew A. Eisenstein
Rosemary Szanyi
601 Massachusetts Avenue, NW
Washington, D.C. 20001-3743
(202) 942-5000
anne.davis@arnoldporter.com
matthew.eisenstein@arnoldporter.com
rosemary.szanyi@arnoldporter.com

*Counsel for Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service Association*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Kenneth A. Gallo*
Kenneth A. Gallo
Donna M. Ioffredo

Lisa Danzig
2001 K Street, NW
Washington, D.C. 20006-1047
Tel.: (202) 223-7300
Fax: (202) 223-7420
kgallo@paulweiss.com
dioffredo@paulweiss.com
ldanzig@paulweiss.com

Brette Tannenbaum
Nina Kovalenko
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990
btannenbaum@paulweiss.com
nkovalenko@paulweiss.com

*Counsel for Defendants Mastercard
Incorporated and Mastercard International
Incorporated*