UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TARGET CORP., *et al.*,<br><br>                Plaintiffs,<br><br>v.<br><br>VISA INC., *et al.*,<br><br>                Defendants. | Case No. 13-cv-3477 (AKH) |
| 7-ELEVEN, INC., *et al.*,<br><br>                Plaintiffs,<br><br>v.<br><br>VISA INC., *et al.*,<br><br>                Defendants. | Case No. 13-cv-4442 (AKH) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
FOR A CONTINUANCE OF OCTOBER 20, 2025 TRIAL**

In a conference on June 5, 2025, this Court raised a concern that on the current trial schedule the jurors would be deliberating just before Christmas. After discussing the matter with the parties—none of which claimed prejudice from moving the trial—the Court set the trial for April 20, 2026, subject to the agreement of Judge Chang in the *Grubhub* case to adjourn the May 11, 2026 trial date in that case. The Court denied a later-filed prejudice objection from the Plaintiffs. Plaintiffs then took their rejected objection to Judge Chang, moving for leave to submit a letter in which they argued against an adjournment, claiming prejudice. Counsel for *Target* here (which is also counsel for *Grubhub*) also stated in a status conference report to Judge Chang that

1

"[t]he only reason Judge Hellerstein gave for possibly moving the October 20, 2025 trial date is so that jurors would be able to complete their Christmas shopping." Based on the parties' submissions, Judge Chang declined to move the *Grubhub* trial.

Defendants now move this Court for a continuance of the October 20, 2025 trial date to a date after the *Grubhub* trial or, alternatively, to a date in January 2026. This Court's concerns about a trial commencing on October 20 are well-founded and prudential. The liability portion of these matters is highly unlikely to go to the jury before the Monday of Christmas week. Deliberations on liability are likely to be impacted by holiday distractions and juror concerns about being unable to participate in holiday preparations, plans, and family gatherings. Any subsequent damages trial will then take at least two weeks. Even with this Court's long experience and ability to manage trials efficiently, this trial will drag on past Christmas and New Year's, imposing hardship on the jurors, impairing their focus, jeopardizing the fairness of their deliberations, and prejudicing the parties.

The best solution is to continue the trial to a time period when these risks are not present. Commencing the trial in late September 2026 (after the High Holidays), following the *Grubhub* trial, would accomplish that. Alternatively, commencing the trial in January 2026, subject, of course, to the Court's schedule, would likewise address the Court's concerns.

Lastly, Defendants respectfully request that this Court shorten the time for a response to their motion to seven days. Defendants submit that a response by June 23 is appropriate in light of the approaching trial date and associated deadlines, and this Court has the discretion to manage the briefing deadlines accordingly. Local Civil Rule 6.1 (establishing time for motion papers "unless provided otherwise . . . by the court . . . in a direction in a particular case"); *U.S. Sec. &*

*Exch. Comm'n v. Aronson*, 665 F. App'x 78, 80 (2d Cir. 2016) (summary order) (recognizing a district court's inherent power to manage its docket in the context of ordering a briefing schedule).

## FACTS

The Setting Of The October 20, 2025 Trial Date, And The Court's Concerns

The Court set the October 20, 2025 trial date at the first conference after remand, in August 2024. Since then, the Court has conducted three additional conferences, probing the parties about their claims and defenses, and further advising itself of the scope and scale of the trial. At the June 5, 2025 conference, the Court inquired in detail into the parties' expert witness line-ups and their estimates for the length of the trial. The Court thereafter noted that an October 20, 2025 trial date could cause juror deliberations to encroach on the winter holidays. ECF No. 250 ("June 5 Tr."), at 30:13-16. The Court proposed shifting the trial date to April 2026 to account for "an eight-week trial, plus maybe more to pick a jury in the beginning and time for deliberation at the end," and thereby mitigate its concerns. *Id.* at 30:25-31:2.

When asked if they were available in April 2026, Plaintiffs said they were, and while they expressed a preference for maintaining the October 20 trial date, they did not assert that the Court's proposed continuance would prejudice them. The Court then stated that the trial date would be moved "[i]f the district judge in Chicago is willing to adjourn the case, the *Grubhub* case." *Id.* at 34:15-18. Defendants offered to raise the issue at an upcoming status conference with the *Grubhub* Plaintiffs on June 13, 2025, and the Court directed the parties to promptly file a letter after the *Grubhub* conference. *Id.* at 33:17-24, 34:15-35:2.

In the days following the June 5 conference, however, the *Target* and *7-Eleven* Plaintiffs raised newfound objections, arguing for the first time that moving the trial date would be prejudicial and asserting that a joint *Target*/*7-Eleven* trial could be done far more swiftly than

3

anyone had previously calculated. *See* ECF No. 247. This Court ruled: "Denied. The dates discussed as a potential change of date for trial in yesterday's hearing was accepted by all, and shall stand." ECF No. 248. The Court then formalized its order and reset the dates for the final pretrial conference and trial. ECF No. 249.

The *Target* and *7-Eleven* Plaintiffs subsequently sought leave as nonparties in *Grubhub* to file the same objections this Court already rejected, and urged the *Grubhub* court to "not adjourn its trial setting." *Grubhub Holdings Inc., et al. v. Visa Inc., et al.*, No. 19-cv-07273 ("*Grubhub*"), ECF No. 112 (N.D. Ill. June 9, 2025). The *Grubhub* Court granted the motion. *Grubhub*, ECF No. 114 (N.D. Ill. June 12, 2025). At a status conference on June 13, 2025, Judge Chang denied this Court's request for a continuance. *Grubhub*, ECF No. 116 (N.D. Ill. June 13, 2025).

The Trial Will Run Through The Winter Religious Holidays And New Year's Day

The trial here will involve five plaintiffs, six defendants, and claims under both Section 1 and Section 2 of the Sherman Act. Over the 20-year timeline of Plaintiffs' claims, the payments industry experienced significant changes, many of which are directly implicated by Plaintiffs' allegations. The alleged markets are massive—the entire United States market for credit cards, and the entire United States market for debit cards—and affect the way hundreds of millions of Americans make purchases every day. Plaintiffs have put in issue not only the challenged rules—primarily, the honor-all-cards, surcharging, and default interchange rules—but a long litany of practices, fees, and relationships, including:

1. The alleged "conspiracy" between each network and its member banks;

2. The networks' IPOs (which Plaintiffs allege were in furtherance of, and did not discontinue, these alleged arrangements);

3. The standards for qualifying for rewards cards and managing those portfolios;

4

4. A variety of network fees to acquirers and to issuers;

5. The implementation of EMV (chip card) technology;

6. Defendants' dealings with other merchants (*e.g.*, Amazon, Costco, Kroger, and Walmart);

7. Defendants' dealings with digital wallets providers and financial technology companies such as Apple, PayPal, Plaid, Klarna, Stripe, and Square;

8. The networks' dealings with Defendant (and other) issuers, as well as with a myriad of other participants in the payments industry; and

9. The Durbin Amendment to the Dodd-Frank Act and its implications, and numerous other issues.

The *7-Eleven* Plaintiffs' Section 2 claims against Visa implicate an additional set of practices and fees, including FANF, PAVD, routing deals with issuers, acquirers and merchants, and various other matters. Plaintiffs' experts, of course, will purport to characterize the history of the networks, proffer opinions on the alleged anti-competitiveness of the rules and various practices, hypothesize but-for worlds, detail Defendants' profitability (all subject to *in limine* rulings), and a good deal else besides. In addition, Plaintiffs' experts will proffer arguments based on how other networks operate, and intend to proffer arguments on how the payments industry functions in Australia, Canada, Europe, and New Zealand.[1] Plaintiffs claim to be able to accomplish all of this in two to three weeks. Defendants are skeptical, to say the least.

In any event, that is all before we get to the defense. Defendants will, of course, have to contest and rebut Plaintiffs' evidence, demonstrate that each of the rules and practices Plaintiffs impugn is pro-competitive and that each of the five Plaintiffs has benefited, and very substantially,

---

[1] Defendants intend to file motions *in limine* as to various evidence whose relevance is either dubious or outweighed by other factors (or both).

5

from these rules and practices. Defendants will show, among other things, that other networks (including American Express, Discover, and each of several debit card networks) have the same rules that Visa and Mastercard have and charge similar fees; that through co-brand and other arrangements Plaintiffs (and other merchants) each receive massive benefits, including a share of the interchange fees they deride; that cardholders—who do not figure in Plaintiffs' calculus, but whose interests and pricing are required to be considered in the real world and as a matter of law— benefit enormously from Defendants' rules and practices; that output and innovation in the payments industry has increased massively over the relevant time period; and various other matters. Defendants will require at least four weeks to put on their defense.

Thereafter, Plaintiffs will put on their rebuttal case. No matter what they may say today, they will want and need to address the massive evidentiary showing Defendants will make if they have any hope of getting their case to the jury. It is unrealistic to assume that Plaintiffs can accomplish this in less than a week, and two seems far more realistic.

Even assuming the parties slim down their trial presentations, Plaintiffs are likely to put on at least 20 witnesses and Defendants at least 30. Each of the five Plaintiffs will call to the witness stand one or two current or former employees. Plaintiffs have six experts and have also identified various Visa, Mastercard, and bank-affiliated witnesses as well as third-party witnesses to testify live. That comes to about, conservatively, 20 witnesses, in addition to certain witnesses who will appear by deposition designation. As to Defendants, each network will call to the witness stand a minimum of (and likely more than) four current or former employees.[2] Each bank will call a minimum of (and likely more than) two current or former employees. As discussed at the June 5

---

[2] This is necessitated by the length and scope of Plaintiffs' claims. Different network witnesses have responsibility for the rules, for pricing, for relationships with issuers, merchants, acquirers, digital wallet providers and other third parties, for technical innovations, for credit, for debit, and for the various other matters put in issue by Plaintiffs.

status conference, Defendants have 13 experts; even assuming one to three are dropped, 10 are likely to testify. Defendants, too, intend to call certain non-party witnesses, as well as witnesses by deposition designation.

All in all, it is highly likely that **_in excess of 50 witnesses_** will testify at trial, with each of six Defendants having the right to cross-examine each of 20 Plaintiff witnesses, and each of two Plaintiffs' groups having the right to cross-examine each of 30 or more Defendant witnesses.

With eight four-day trial weeks, and allowing for Veteran's Day, religious holidays, Thanksgiving, openings, closings, and instructions, there is simply no reasonable prospect that the *liability* case can be fully presented to the jury before the Monday of Christmas week—if then. *See, e.g.*, *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 268 (2d Cir. 1979) (in an antitrust case bringing both Section 1 and Section 2 claims, "[t]he liability phase of the trial by itself consumed more than six months, and the damages aspect required approximately another month"); *Litton Sys., Inc. v. Honeywell, Inc.*, No. 90-cv-4823, 1996 WL 634213, at *1 (C.D. Cal. July 24, 1996) (40-day antitrust trial with only Section 2 claims against a single defendant). Thereafter, if there is a verdict for Plaintiffs, the damages case will have to be tried. Plaintiffs have four damages experts among them, Defendants have two, there may be lay witness testimony on damages, and the damages sought include Section 1 alleged interchange overcharge damages against each of Visa, Mastercard, and the bank defendants for each of credit and debit, Section 1 damages against each network relating to network fees, and Section 2 damages against Visa alone relating to debit. Between liability and damages, as the foregoing demonstrates, and as the below illustrates, the trial will run into the new year:

> ***Week of October 20***
> *Monday, October 20* – Voir Dire/Openings
> *Tuesday, October 21* – Trial Day 1
> *Wednesday, October 22* – Trial Day 2

*Thursday, October 23* – Trial Day 3

**Week of October 27**
*Monday, October 27* – Trial Day 4
*Tuesday, October 28* – Trial Day 5
*Wednesday, October 29* – Trial Day 6
*Thursday, October 30* – Trial Day 7

**Week of November 3**
*Monday, November 3* – Trial Day 8
*Tuesday, November 4* – Trial Day 9
*Wednesday, November 5* – Trial Day 10
*Thursday, November 6* – Trial Day 11

**Week of November 10**
*Monday, November 10* – Trial Day 12
*Tuesday, November 11* – Veterans' Day
*Wednesday, November 12* – Trial Day 13
*Thursday, November 13* – Trial Day 14

**Week of November 17**
*Monday, November 17* – Trial Day 15
*Tuesday, November 18* – Trial Day 16
*Wednesday, November 19* – Trial Day 17
*Thursday, November 20* – Trial Day 18

**Week of November 24**
*Monday, November 24* – Trial Day 19
*Tuesday, November 25* – Trial Day 20
*Wednesday, November 26* – Day Before Thanksgiving
*Thursday, November 27* – Thanksgiving

**Week of December 1**
*Monday, December 1* – Trial Day 21
*Tuesday, December 2* – Trial Day 22
*Wednesday, December 3* – Trial Day 23
*Thursday, December 4* – Trial Day 24

**Week of December 8**
*Monday, December 8* – Trial Day 25
*Tuesday, December 9* – Trial Day 26
*Wednesday, December 10* – Trial Day 27
*Thursday, December 11* – Trial Day 28

**Week of December 15**

|  |  |  |
|---:|:---:|:---|
| *Monday, December 15* | – | Trial Day 29 [Hanukkah] |
| *Tuesday, December 16* | – | Trial Day 30 [Hanukkah] |
| *Wednesday, December 17* | – | Trial Day 31 [Hanukkah] |
| *Thursday, December 18* | – | Trial Day 32 [Hanukkah] |

***Week of December 22***

|  |  |  |
|---:|:---:|:---|
| *Monday, December 22* | – | Trial Day 33 |
| *Tuesday, December 23* | – | Trial Day 34 |
| *Wednesday, December 24* | – | Christmas Eve |
| *Thursday, December 25* | – | Christmas Day |

***Week of December 29***

|  |  |  |
|---:|:---:|:---|
| *Monday, December 29* | – | Trial Day 35 |
| *Tuesday, December 30* | – | Trial Day 36 |
| *Wednesday, December 31* | – | New Year's Eve |
| *Thursday, January 1* | – | New Year's Day |

## **ARGUMENT**

By Plaintiffs' own choice, this Court will oversee, and the parties will present, a highly complex joint trial involving five merchants (from two separately represented Plaintiffs' groups) and six separately represented defendants.[3] But when the Court raised concerns about the trial's encroachment on the jurors' holiday schedules, and asked the parties to raise with Judge Chang adjourning the May 11, 2026 trial in the (much later filed) *Grubhub* case, Plaintiffs chose to deliberately frustrate the Court's wishes. Plaintiffs contended that this Court's concerns were not well-founded and pressed to the *Grubhub* Court that the May 11, 2026 trial should not be adjourned. Now, this Court is faced with trying a massive case—over the same duration of eight weeks that Judge Chang set for the Section 1-only, two-defendant *Grubhub* case—in a timeframe that the Court correctly determined would present very serious issues of jury convenience and party prejudice. The Court should adjourn the trial to a date that will not present the concerns that the Court (*sua sponte*) raised.

---

[3] A *Target*-only trial, with fewer merchants and defendants, and no monopolization claims, was urged by Defendants but opposed by Plaintiffs, and the Court ruled for Plaintiffs.

9

The Court's concerns, informed by long experience, were well-founded. Consider the following illustrative examples:

- On December 17, 2009, directly after a verdict in a trial that ended in mid-December, a juror wrote the court and stated: "I voted yes to find him [defendant] guilty of the charges although I strongly disagreed to his guilt on the second charge. My decision was made due to extreme pressure placed on me by the other jurors. . . . the climate in the jury room was one of extreme frustration and anger at having to sit through the hearing for so long as well as having to deliberate through the Christmas season. One juror complained that she had given up enough of their time for 'this scum bag' referring to Mr. Yeagley. Another juror complained that she would have to make up her time at work by working through the Christmas holiday instead of enjoying it with her family. . . . I have to live with my conscience and have been troubled by the outcome of this case." *United States of America v. Christopher Yeagley*, No. 08-CR-707, ECF No. 83 (S.D.N.Y. Dec. 21, 2009).

- In another case, after the parties rested on December 14, the court determined that a juror had to be excused after receiving a note before deliberations stating that the juror's "family is gone, and they are waiting for me," and after questioning the juror, learned from the juror that her family was "in Santo Domingo for the Christmas holiday" and she was concerned "that if she did not leave on this flight she would be unable to arrange another flight during the holiday season." *United States v. Smith*, 918 F.2d 1501, 1511 (11th Cir. 1990). The district judge excused her, stating: "I think that the entire fate of the trial could hang in balance[.]" *Id.* at 1512.

Moreover, because the deliberations are likely to run sufficiently long as to require an adjournment for the holidays, that will add even more prejudice. Courts have held that "in light of the intervening holidays . . . [a] break in deliberations of this length 'would have risked dulling the jurors' recollections of the evidence and summations and heightened the danger that the jurors would discuss the case with outside persons.'" *United States v. Nichols*, 22 F.3d 1185 (D.C. Cir. 1994) (citing *United States v. Stratton*, 779 F.2d 820, 832 (2d Cir. 1985) (discussing a four and a half-day break)).

Jury deliberations in antitrust cases are notoriously, and understandably, lengthy. *See, e.g.*, *Berkey Photo, Inc. v. Eastman Kodak Co.*, 457 F. Supp. 404, 443 (S.D.N.Y. 1978), *rev'd in part*, 603 F.2d 263 (2d Cir. 1979) (describing an antitrust trial that required eight days of deliberations on liability and five on damages, and involving trial over the holidays that led to "paralyzing

weather" resulting in a juror being excused for chest pains in the wake of a severe snowstorm that also shut down the courthouse); *ILC Peripherals Leasing Corp. v. Int'l Bus. Machines Corp.*, 458 F. Supp. 423, 444 (N.D. Cal. 1978) (describing an antitrust trial involving a single defendant and only monopolization claims that required nineteen days of deliberations); *see also Litton Sys., Inc. v. Honeywell, Inc.*, No. 90-cv-4823, 1996 WL 634213, at *1 (C.D. Cal. July 24, 1996) (describing an antitrust trial with only Section 2 claims against a single defendant that involved "nineteen days of deliberations"); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 663 F. Supp. 1360, 1398 (D. Kan. 1987) (four weeks of jury deliberations following six-week trial with federal antitrust and state law claims); *Bolton v. Tesoro Petroleum Corp.*, 871 F.2d 1266, 1276 (5th Cir. 1989) (three weeks of deliberations after lengthy trial consolidating class and derivative actions).

The Court and the parties should fully expect deliberations here to run long, and the Christmas holidays substantially complicate, and indeed risk compromising, those deliberations. One of Your Honor's colleagues put it thus with respect to a trial commencing not long before the holidays:

> And that poses a problem, because if the trial started on November 28, as scheduled, the fourth week of trial would be from December 19 to December 23, very close to the traditional holy days and holidays, and with no guarantee that the evidence would be completed and a verdict reached by that time. ***There is a real danger that the distractions for jurors inevitably resulting from the approach of this solemn and festive holiday season would prevent them from paying careful attention to the evidence, the summations of counsel, and the Court's instructions, and then giving sufficiently careful deliberation to the eight counts of the indictment. The overarching concern was that starting the trial, as it was now shaping up, on November 28 would endanger the fairness of the proceeding***, a risk shared by both the Government and the defendant.

*United States v. Landry*, No. 05-CR-376 (CSH), 2005 WL 3046295, at *3 (S.D.N.Y. Nov. 10, 2005) (emphasis added).

The current trial schedule is unmanageable and presents substantial risks of prejudice. The Court should adjourn the trial to a later date. Lastly, Defendants further request that the court shorten the time for a response to their motion to seven days, as the issue of the trial date is time-sensitive, and a prompt resolution would benefit both the parties and this Court.

Dated: June 16, 2025

Respectfully submitted,

**HOLWELL, SHUSTER & GOLDBERG LLP**

By: */s/ Michael S. Shuster*
Michael S. Shuster
Demian A. Ordway
Benjamin F. Heidlage
Gregory J. Dubinsky
425 Lexington Avenue
New York, NY 10017
(646) 837-5151
mshuster@hsgllp.com
dordway@hsgllp.com
bheidlage@hsgllp.com
gdubinsky@hsgllp.com

**ARNOLD & PORTER KAYE SCHOLER LLP**

Robert J. Vizas
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
(415) 471-3100
robert.vizas@arnoldporter.com

Anne P. Davis
Matthew A. Eisenstein
Rosemary Szanyi
601 Massachusetts Avenue, NW
Washington, D.C. 20001-3743
(202) 942-5000
anne.davis@arnoldporter.com
matthew.eisenstein@arnoldporter.com
rosemary.szanyi@arnoldporter.com

*Counsel for Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service Association*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Kenneth A. Gallo*
Kenneth A. Gallo
Donna M. Ioffredo
Lisa Danzig
2001 K Street, NW
Washington, D.C. 20006-1047
Tel.: (202) 223-7300
Fax: (202) 223-7420
kgallo@paulweiss.com
dioffredo@paulweiss.com
ldanzig@paulweiss.com

Brette Tannenbaum
Nina Kovalenko
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990
btannenbaum@paulweiss.com
nkovalenko@paulweiss.com

*Counsel for Defendants Mastercard Incorporated and Mastercard International Incorporated*

**MORRISON & FOERSTER LLP**

By: */s/ Natalie Fleming Nolen*
Natalie Fleming Nolen
2100 L Street, NW, Suite 900
Washington, D.C. 20037
(202) 887-1500
nflemingnolen@mofo.com

Michael B. Miller
Mika M. Fitzgerald
250 West 55th Street
New York, NY 10019
(212) 468-8000
mbmiller@mofo.com
mfitzgerald@mofo.com

*Attorneys for Defendants Bank of America Corp., Bank of America, N.A., and FIA Card Services, N.A.*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

By: */s/ Boris Bershteyn*
Boris Bershteyn
Lara A. Flath
Kamali P. Willett
One Manhattan West
New York, NY 10001
(212) 735-3000
Boris.bershteyn@skadden.com
Lara.Flath@skadden.com
Kamali.willett@skadden.com

*Attorneys for Defendants JPMorgan Chase & Co., Paymentech, LLC (and as successor to Chase Paymentech Solutions, LLC), and JPMorgan Chase Bank, N.A. (and as successor to Chase Bank USA, N.A.)*

**SIDLEY AUSTIN LLP**

By: */s/ Benjamin R. Nagin*
Benjamin R. Nagin
Thomas Andrew Paskowitz
787 Seventh Ave
New York, NY 10019
(212) 839-5300
bnagin@sidley.com
tpaskowitz@sidley.com

*Attorneys for Defendants Citigroup Inc., Citibank, N.A., and Citicorp Payments Services, Inc. (now Citicorp Credit Services, Inc. (USA))*

**PATTERSON BELKNAP WEBB & TYLER LLP**

By: */s/ William F. Cavanaugh, Jr.*
William F. Cavanaugh, Jr.
Amy N. Vegari

14

1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
wfcavanaugh@pbwt.com
avegari@pbwt.com

*Attorneys for Defendants Wells Fargo & Company and Wells Fargo Bank, N.A.*